UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DAVID ARMANDO MONSIVAIS, IV,    )
                                )
                    Petitioner, )
                                )
        v.                      )    No. 1:24-cv-00939-JPH-MKK
                                )
MARK SEVIER,                    )
                                )
                    Respondent. )

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND
RULING ON PETITIONER'S PENDING MOTIONS**

Petitioner David Armando Monsivais IV was convicted of rape, residential
entry, stalking, and battery in Indiana state court and sentenced to an
aggregate term of 20 years' imprisonment. Dkt. 1. Mr. Monsivais seeks a writ of
habeas corpus pursuant to 28 U.S.C. § 2254.  Additionally, he has filed several
motions that the Court now addresses. The Court has considered Mr.
Monsivais's motion to file supplement reply, dkt. 31, his motion to rebut the
presumption of state facts, dkt. 8, and his motions for judicial notice, dkts. 10,
22. These motions, dkts. [8], [10], [22], [31], are **GRANTED** to the extent that
the Court has considered the supplemental materials and taken judicial notice
when ruling on the merits of the petitioner's habeas petition. Mr. Monsivais's
motion for status on hearings/injunction, dkt. [36], is **GRANTED** to the extent
that this Court's order provides the status of his pending motions.

For the following reasons, his petition for a writ of habeas corpus is
**DENIED,** and a certificate of appealability will not issue. Mr. Monsivais's

motions for legal and court assistance, dkts. [44], [45] are **GRANTED** to the extent that the Court's order provides relevant legal citations to caselaw related to this matter but are **DENIED** to the extent that the Court does not have general legal reference materials to provide pro se litigants. Mr. Monsivais's additional motions, dkts. [2], [6], [12], [14], [23], [43], [47], and [53] are **DENIED**. Mr. Monsivais's motion for copies, dkt. [54], is **GRANTED** to the extent that the Court will provide Mr. Monsivais with a copy of the *in forma pauperis* on appeal form and a copy of the docket sheet**.**

## I.    Background

### A. Factual Background, Trial, and Direct Appeal

Federal habeas review requires the Court to "presume that the state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence." *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018); *see* 28 U.S.C. § 2254(e)(1). On direct appeal, the Indiana Court of Appeals summarized the relevant facts and procedural history as follows:

> In the early summer of 2019, C.R. entered into a relationship with Monsivais and "everything happened very fast." (Transcript Vol. II, p. 21). In October 2019, C.R. gave Monsivais a key to her residence in South Bend, Indiana, and added him to the property title of her home. Although they were happy initially, the relationship soon became acrimonious and unhealthy. C.R. first started to become concerned, when on October 1, 2019, at approximately 4:30 a.m., Monsivais pounded on C.R.'s bedroom window and screamed at her. When she heard him pulling light fixtures off the back of her house, she called 911. This incident was followed by a "period of calm" until October 27, 2019. (Tr. Vol. II, p. 24). That day, C.R. was holding a stack of dishes which were slapped out of her hands by Monsivais.

Monsivais then knocked C.R. down, laid on top of her, and put his hands around her neck until she lost consciousness.

On February 26, 2020, C.R. left the residence to go for a walk. As she stepped on the concrete steps leading to her home, Monsivais grabbed her arm and ordered her to "get back here." (Tr. Vol. II, p. 49). He tried to spin C.R. around and slammed her into the concrete steps where she landed on her knees and elbow. Monsivais eventually left the house but returned later that night, when he again injured C.R. by pushing her to the floor.

From October 2019 to March 2020, Monsivais threatened C.R. on multiple occasions. On one occasion, Monsivais threatened to send C.R.'s son a picture of her in which she was partially unclothed. He also threatened to shove her down the stairs and told her, "I'll do whatever I want to you." (Tr. Vol. II, p. 62). Not only did he threaten to kill C.R. several times, he also informed her that he would kill himself if she would refuse to see him. After Monsivais called C.R. forty times on February 24, 2020, C.R. attempted to end the relationship because she no longer felt safe around him. She texted him during the first week of March, while Monsivais was out of state for work to avoid a violent reaction. Despite C.R.'s text, Monsivais continued to come to her house uninvited.

Eventually, C.R. obtained a protective order against Monsivais. When Monsivais was notified of the protective order, he became angry and texted C.R. that she was "going to ruin his life." (Tr. Vol. II, p. 42). "Every day" Monsivais followed C.R. to and from work and would approach her when she stopped at a gas station. (Tr. Vol. II, p. 47). One time, he tried to run her car off the road. Monsivais also drove up to C.R.'s home and would attempt to block her in the driveway and enter the garage. The protective order terminated on March 27, 2020.

On March 15, 2020, Monsivais called C.R. 93 times and texted her approximately 100 times. C.R. responded to some of the calls and texts because she knew from experience that otherwise Monsivais would come to her house. In one text, Monsivais told C.R. that "I want to have sex with you, I'm not taking no for an answer. I'm going to do whatever I want to do." (Tr. Vol. II, p. 81). Later that night, Monsivais arrived at C.R.'s home. When C.R. refused to let Monsivais enter, he hit the front door with enough force that the deadbolt broke through the drywall. C.R. hid in the dining room, and when Monsivais went upstairs, she ran out of the front door. Chasing after C.R., he attempted to apologize to her and asked her to come back inside the house. Instead of re-entering the house,

C.R. went to the garage to smoke. In the garage, Monsivais attempted to undress C.R. and started touching her sexually, while she tried to avoid his advances. They eventually went inside the house and upstairs to the bedroom.

In the bedroom, Monsivais ordered C.R. to bend over so he could lick her anus. He told C.R. to assume sexual positions that she was uncomfortable with and he made her perform oral sex on him. Monsivais had "complete control of the situation" and when they finished sexual intercourse, Monsivais did not allow C.R. to leave the bed to wash up. (Tr. Vol. II, p. 91). When C.R. finally was able to call 911, she stated that Monsivais wanted to have sex with her and that she had cooperated because she did not want to get killed. When officers arrived at the residence, they noticed that C.R. was "[v]ery scared, hysterical, [and was] crying[.]" (Tr. Vol. II, p. 246).

*Monsivais v. State,* 194 N.E.3d 642, 2022 WL 3586505, *1-2 (Ind. Ct. App. Aug. 19, 2022) (unpublished) (in the record at docket 26-7).

The State initially charged Mr. Monsivais in May 2020 with rape and residential entry. *Id.* at *2; dkt. 26-7 at 5. On September 30, 2020, it filed an amended information and added the charges of stalking, strangulation, and two counts of domestic battery. *Id.*

A jury trial was held in August 2021. *Id.* Mr. Monsivais's trial counsel Mark Lenyo focused the defense on challenging the rape and stalking charges. Dkt. 27-5 at 134–35. In his closing, Mr. Lenyo mentioned that C.R. did not initially tell police she had been raped; pointed out some inconsistencies about C.R.'s alcohol use; emphasized that C.R. never testified that she refused Mr. Monsivais's sexual advances on the night of the rape; pointed the jury to C.R.'s communications with Mr. Monsivais after March 15, 2020, the date of the rape, including a text message in which C.R. sent him a screenshot

from a sex tape Mr. Monsivais and C.R. made together; and argued about C.R.'s inconsistent behavior in claiming to be stalked but also still interacting with Mr. Monsivais. *Id.* at 134–40, 142.

The jury found Mr. Monsivais guilty on all counts except the strangulation charge, and the trial court imposed an aggregate 20-year sentence of imprisonment. *Monsivais*, 2022 WL 3586505 at *2; dkt. 26-7 at 5.

Mr. Monsivais argued on appeal that the trial court erred because the state presented insufficient evidence to prove the rape and stalking charges. *Id.* The Indiana Court of Appeals affirmed Mr. Monsivais's convictions. *Monsivais*, 2022 WL 3586505 at *2; dkt. 26-7 at 9. He did not seek review from the Indiana Supreme Court. Dkt. 26-2 at 8; dkt. 1 at 2.

### B. Post-Conviction Proceedings in State Court

Mr. Monsivais filed a pro se petition for post-conviction relief on September 9, 2022. Dkt. 1 at 3; dkt. 26-3 at 2. After an evidentiary hearing, his petition was denied. *Id.* Mr. Monsivais appealed the denial of post-conviction relief and presented three arguments that are relevant to his habeas petition: 1) that his trial counsel was ineffective for failing to object to the amendment to the charging information that added the stalking, strangulation, and domestic battery charges, 2) that his trial counsel was ineffective for failing to investigate and then show the jury evidence that Mr. Monsivais and C.R. continued to have an intimate relationship after he raped her, and 3) that trial counsel was

ineffective for failing to object to alleged prosecutorial misconduct. Dkt 26-9.

The Indiana Court of Appeals affirmed the denial of Mr. Monsivais's petition for post-conviction relief. *Monsivais v. State*, 237 N.E.3d 612, 2024 WL 1987693, (Ind. Ct. App. May 6, 2024) (unpublished), *transfer denied*, 235 N.E.3d 138 (Ind. 2024) (in the record at docket 26-12). The court held that Mr. Monsivais failed to prove deficient performance when his trial counsel did not object to the added charges because he could not prove that an objection would have been successful. *Id.* at *4. For Mr. Monsivais's claim that his trial counsel should have objected to alleged prosecutorial misconduct, the court held that Mr. Monsivais failed to show that prosecutorial misconduct occurred, and that trial counsel "effectively" cross-examined the victim when he elicited that she had contacted Mr. Monsivais after the rape. *Id.* at *5. Finally, for Mr. Monsivais's failure to impeach claim, the court held that this claim was waived because he failed to develop a cogent argument. *Id.* at *4. Mr. Monsivais raised these issues in a petition for transfer to the Indiana Supreme Court, but the Supreme Court denied transfer. Dkts. 26-13, 26-14.

### C. Federal Habeas Petition

In Mr. Monsivais's habeas petition, he alleges that his trial counsel was ineffective for the following reasons: 1) failure to object to the amended charging document, 2) failure to investigate or present evidence of C.R.'s behavior after the offense conduct, and 3) failure to object to alleged prosecutorial misconduct. Dkt. 1. Mr. Monsivais also brings a freestanding

claim of actual innocence. *Id.*

## II.    Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). Where a state court has adjudicated the merits of a petitioner's claim, a federal court cannot grant habeas relief unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (en banc). If the last reasoned state court decision did not adjudicate the merits of a claim, or if the adjudication was unreasonable under § 2254(d), federal habeas review of that claim is *de novo*. *Thomas v. Clements*, 789 F.3d 760, 766−68 (7th Cir. 2015).

Section 2254(d) is not the only obstacle to habeas relief. A petitioner may procedurally default his claim by failing to fairly present it "throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Richardson v. Lemke*, 745 F. 3d 258, 268 (7th Cir. 2014). "Procedural default may be excused where the petitioner demonstrates either (1) cause for the default and actual prejudice or (2) that failure to consider the claims will result in a fundamental miscarriage of justice." *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018) (cleaned up).

### III.    Discussion

A criminal defendant has a right under the Sixth Amendment to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish that "counsel's assistance was so defective as to require reversal," a petitioner must show: (1) counsel's performance was deficient; and (2) counsel's deficient performance prejudiced the petitioner. *Id.* "This inquiry into a lawyer's performance and its effects turns on the facts of the particular case, which must be viewed as of the time of counsel's conduct." *Laux v. Zatecky*, 890 F.3d 666, 673–74 (7th Cir. 2018) (citation and quotation marks omitted). "As for the performance prong, because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight, *Strickland* directs courts to adopt a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 674 (citation and quotation marks omitted). "The prejudice prong requires the defendant or petitioner to 'show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

Respondent argues Mr. Monsivais has not shown that he is entitled to relief on his first two claims and that his third claim is procedurally defaulted.

### A. Failure to Object to the Amended Charging Information

Mr. Monsivais argues that his counsel was ineffective because he did not object to the prosecutor's amendment of the charging document.

The Indiana Court of Appeals reasonably determined that trial counsel was not ineffective for failing to object to the charging amendment because such an objection would have been unsuccessful. Dkt. 26-12 at 8. Evaluating this claim requires the Court to examine Indiana law and the Court of Appeals' interpretation of that law. In doing so, this Court "must defer to state-court-precedent concerning the questions of state law underlying the defendant's ineffectiveness claim." *Shaw v. Wilson*, 721 F.3d 908, 914 (7th Cir. 2013).

Under Indiana law, a charging information can be amended in "matters of substance … at any time" provided the amendment "does not prejudice the substantial rights of the defendant." Ind. Code § 35-34-1-5(b) (2020). To prevail on an objection to an amendment, a defendant must prove prejudice. *Id*; *see Gomez v. State*, 907 N.E.2d 607, 611 (Ind. Ct. App. 2009). The prejudice inquiry asks "whether the defendant had a reasonable opportunity to prepare for and defend against the charges." *Erkins v. State*, 13 N.E. 3d 400, 405−06 (Ind. 2014) (cleaned up). Further, an amendment will not violate a defendant's

substantial rights if it "does not affect any particular defense." *Hobbs v. State*, 160 N.E. 3d 543, 551 (Ind. Ct. App. 2020).

Here, the Indiana Court of Appeals reasonably concluded that trial counsel did not perform deficiently because any objection would have been unsuccessful. The amendment added four total counts including stalking, strangulation, and two domestic batteries, all involving prior incidences with C.R. Dkt. 27-10 at 13 (PCR Tr.). Counsel noted at the PCR hearing that, if he had objected to the amended information, "the remedy on amending the charges is that the court would grant you a continuance to give you additional time to prepare. And as I recall it, this amendment didn't take place on the eve of the trial." *Id.* at 20. Rather, as the Indiana Court of Appeals observed, the amendment occurred more than ten months before trial. *Monsivais*, 2024 WL 1987693 at *4.

The appellate court further noted that the additional charges did not foreclose trial counsel from pursuing a consent defense to the rape charge. *Id.* This was important because, as counsel testified at the post-conviction hearing, his primary concern was obtaining an acquittal to the rape charge. *See* dkt. 27-10 at 18-19 (testifying that he was focused on the residential entry and rape charges over the misdemeanor domestic battery charges "because of the relatively shorter exposure you faced on those charges"). Trial counsel's

strategic decision is "virtually unchallengeable" when there is no allegation that the strategy was based on a failure to investigate. *Strickland*, 466 U.S. at 690.

In short, because any objection to the amendment would have been futile, the Indiana Court of Appeals' conclusion that Mr. Monsivais's trial counsel was not ineffective was a reasonable application of *Strickland*. Accordingly, Mr. Monsivais's request for relief on this claim is **DENIED**.

### B. Alleged Prosecutorial Misconduct

Mr. Monsivais next argues that trial counsel was ineffective for failing to object when the prosecutor knowingly elicited false testimony from C.R. Dkt. 1 at 8.

"[A] prosecutor's knowing use of perjured testimony violates the Due Process Clause." *Shasteen v. Saver*, 252 F.3d 929, 933 (7th Cir. 2001) (citations omitted). "When the defendant argues that the government allegedly used perjured testimony, to warrant setting the verdict aside and ordering a new trial, the defendant must establish that: (1) the prosecution's case included perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there is a reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.*

Here, Mr. Monsivais argues that C.R.'s testimony included three false statements:

- she "never wanted contact with [Mr. Monsivais] again";

- "because 'he raped me'";

- she "only sent a sex picture after the rape 'out of concerns' that [he] had 'bad intentions.'"

Dkt. 30 at 18.

Mr. Monsivais argues that these statements made by C.R. were 'false testimony' that the prosecution knew to be false because phone records confirmed that they had a continuing sexual and/or romantic relationship after the rape. *Id* at 17.

The Indiana Court of Appeals reasonably concluded that the prosecutor's use of C.R.'s testimony did not amount to prosecutorial misconduct, and, thus, any objection would have been unsuccessful. *Monsivais*, 2024 WL 1987693 at *5; *see Shasteen*, 252 F.3d at 933 ("'Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony.'") (quoting *United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990)). The Court of Appeals observed that "[t]o the extent that this testimony conflicts with [the victim's] testimony on cross-examination, Monsivais has failed to establish that the prosecutor deliberately sought to mislead the jury on this point, and we note that [trial counsel] effectively exposed this conflict[.]" *Monsivais*, 2024 WL 1987693 at *5. Accordingly, Mr. Monsivais's request for relief on this claim is **DENIED**.

## C. Failure to Investigate and Present Evidence that Mr. Monsivais and C.R. Continued to Have an Intimate Relationship After the Rape

Finally, Mr. Monsivais argues that trial counsel was ineffective by failing to investigate and present evidence that Mr. Monsivais continued to have an intimate relationship with C.R. after the sexual assault. Dkt. 1 at 7.

Respondent argues that this claim is procedurally defaulted. Dkt. 26 at 12. Procedural default occurs when "the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Walker v. Martin*, 562 U.S. 307, 315 (2011) (citation and internal quotation marks omitted). Here, the appellate court found that Mr. Monsivais waived this claim by failing "to develop a cogent argument establishing that [trial counsel] performed deficiently ... and that, but for this unprofessional error, there is a reasonable probability that the result of his trial would have been different." *Monsivais*, 2024 WL 1987693 at *5.

Under Indiana law, the failure to develop and make a cogent argument constitutes waiver of the issue for review. *See, e.g., Dye v. State*, 717 N.E.2d 5, 13 (Ind. 1999); *Smith v. State*, 802 N.E.2d 948, 955 n. 7 (Ind. Ct. App. 2004); *Martin v. Brown*, 129 N.E.3d 283, 285 (Ind. Ct. App. 2019). Because the Indiana Court of Appeals relied on an independent and adequate state law procedural rule in denying Mr. Monsivais's ineffective assistance of counsel claim for failure to impeach, this claim is procedurally defaulted. *See Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004); *Clemons v. Pfister*, 845 F.3d 816, 819; *Walker*, 562 U.S. at 316. Accordingly, Mr. Monsivais's request for relief on this claim is **DENIED**.

13

Mr. Monsivais addressed the issue of procedural default in his supplemental reply, dkt. 31, arguing that because his ineffective assistance claims were meritorious, his procedural default is excused. In support, he cites *Richardson v. Lemke*, 745 F.3d 258, 272 (7th Cir. 2014). There, the Seventh Circuit cited the standard for overcoming procedural default: a court "may excuse a procedural default if the petitioner can show both cause for and prejudice from the default or can demonstrate that the district court's failure to consider the claim would result in a fundamental miscarriage of justice." *Id.* A petitioner can establish cause for a default "by showing that some type of external impediment prevented the petitioner from presenting his claim." Id. Here, Mr. Monsivais simply states that the Indiana Court of Appeals mistakenly found that this claim was waived. Dkt. 31 at 1. This does not show that an external impediment prevented him from presenting his claim.

Further, even if this claim was not procedurally defaulted, it fails on the merits because Mr. Monsivais failed to show that trial counsel was ineffective in his investigation and impeachment of C.R. As the Indiana Court of Appeals recognized, trial counsel impeached C.R. with the actions she took after the assault:

> When cross-examining C.R. at trial, Lenyo got her to admit that on March 30, 2020, "two weeks after [she] had supposedly been sexually assaulted by [Monsivais, she] sent him a screen shot from [a sex] video that [she] had made with him[,]" apparently consensually, in 2019. Trial Tr. Vol. 2 at 163. Lenyo also got C.R. to admit that she "wanted [Monsivais] to share other videos with [her,]" which she described as "[t]he ones [she] never gave consent to[.]" *Id.* at 164.

14

*Monsivais*, 2024 WL 1987693 at *5.

Although Mr. Monsivais believes that his trial counsel should have produced more evidence about their post-assault encounters, the Court of Appeals reasonably found that such evidence would have been cumulative of C.R.'s testimony on cross-examination. *Id.* ("We further observe that the evidence to which Monsivais refers is essentially cumulative of C.R.'s admission that she sent a sexually arousing image to Monsivais after the assault and wanted to receive some in return.") The court's determination that trial counsel was not ineffective for failing to introduce cumulative impeachment evidence was reasonable. *See Snow v. Pfister*, 880 F.3d 857, 866 (7th Cir. 2018) (concluding that, in light of other impeachment evidence and counsel's testimony that "continuing to introduce cumulative impeachment evidence could do more harm than good," state court reasonably found no prejudice for failure to introduce additional impeachment evidence). Mr. Monsivais is not entitled to relief on this claim.

## D. Actual Innocence

In his final ground for relief, Mr. Monsivais alleges that newly discovered evidence entitles him to a new trial. Dkt. 1 at 10, 15. Specifically, he alleges that evidence of C.R.'s continued sexual relationship with him after the rape was omitted by the detective at trial. *Id.* at 10. He further states that "at the

time of the filing there are new discovered facts both intrinsic and extrinsic that support the claim." *Id.*

"A prisoner's proof of actual innocence may provide a gateway for federal habeas review of a procedurally defaulted claim of constitutional error." *McQuiggin v. Perkins*, 569 U.S. 383, 393 (2013) (citing *House v. Bell*, 547 U.S. 518, 537-38 (2006)). However, "the Supreme Court has never held that actual innocence claims, standing alone—separate and apart from any constitutional error—could support habeas relief." *Cal v. Garnett*, 991 F.3d 843, 850 (7th Cir. 2021).

Here, as discussed above, Mr. Monsivais has not established ineffective assistance of counsel, or any other error of constitutional magnitude. Moreover, even if the Court could evaluate the merits of Mr. Monsivais's claim of actual innocence, it would fail.

To demonstrate actual innocence, a petitioner must show "'that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995). "To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs

to back up the claim." *Dixon v. Williams*, 93 F.4th 394, 403 (7th Cir. 2024),
(citing *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005)).

Here, Mr. Monsivais fails to meet that burden. The "new evidence" he
identified consists of (1) two quotes from the victim in the original trial record;
and (2) an affidavit submitted after Mr. Monsivais's habeas petition in which
Mr. Monsivais describes an additional sexual interaction with C.R. and more
romantic text messages that occurred after the rape. Dkt. 30 at 25. The trial
transcript excerpts are not "new evidence" because this was information
directly presented to the jury at trial. *Jones v. Calloway*, 842 F.3d 454, 461
(7th Cir. 2016). *See* dkts. 1 at 10; 27-10 at 63-74. And the evidence of at least
some of the text messages was introduced directly to the jury at trial as well.
Dkt. 2710 at 75-78. Furthermore, Mr. Monsivais does not connect this
evidence to his claim of actual innocence.  As the Indiana Court of Appeals
observed, "C.R.'s post-assault actions are not dispositive of whether she
consented to the assault." *Monsivais*, 2024 WL 1987693 at *5.

Finally, as previously discussed, C.R. testified at trial about her
continued communication with Mr. Monsivais, so this is not new evidence.
*Monsivais*, 2024 WL 1987693 at *5. Mr. Monsivais has not presented any other
evidence in support of his actual innocence claim. He asks for an evidentiary
hearing to develop such evidence, but a petitioner must first make a threshold
showing of actual innocence to warrant a hearing. *Schlup*, 513 U.S. at 332
(when considering a request for an evidentiary hearing, a court "must assess
the probative force of the newly presented evidence"). Mr. Monsivais has failed

to do so. Thus, his requests for an evidentiary hearing, dkts. 2, 53, are **DENIED**.

Mr. Monsivais's motion to expand the record, dkt. 6, and motion for new evidence post-trial, dkt. 47, are similarly **DENIED**. In these motions, Mr. Monsivais asks to incorporate the information he has deemed as 'new evidence' into the Court record, dkt. 6, and moves to revise the state court's record of facts to reflect his own retelling of the events, dkt 47. When a federal court has reviewed a petition under § 2254(d)(1), as the Court has done here, its review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181−82 (2011). The Court cannot look beyond the state court record. Because the Indiana Court of Appeals and this Court have both referred to C.R. by her initials only, the **clerk is directed** to seal the exhibits at docket 6-1, which contain her complete unredacted name.

## IV.  Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 580 U.S. 100, 115 (2017).  Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with

the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 580 U.S. at 123 (citation and internal quotation omitted). Where a petitioner's claim is resolved on procedural grounds, a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claim and about whether the procedural ruling was correct. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." No reasonable jurist could disagree that Mr. Monsivais's ineffective assistance of counsel claims are meritless and/or procedurally defaulted. Therefore, a certificate of appealability is **DENIED**.

## V. Motions for Appointment of Counsel

"Appointing counsel for *pro se* petitioners in habeas corpus cases is a power commended to the discretion of the district court in all but the most extraordinary circumstances." *Winsett v. Washington*, 130 F.3d 269, 281 (7th Cir. 1997). If the petitioner is financially eligible for the appointment of counsel, the Court must next consider whether "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). "As its name betrays, the 'interests of justice' standard contemplates a peculiarly context-specific inquiry," thus the Supreme Court has declined to "provide a general definition of the standard." *Martel v. Clair*,

19

565 U.S. 648, 663 (2012); *see Winsett*, 130 F.3d at 281 (reviewing the district court's denial of counsel under § 3006A(a)(2)(B) by considering if, given the difficulty of the case and the petitioner's ability, the petitioner "could not obtain justice without an attorney" and "would have had a reasonable chance of winning with a lawyer").

The Court finds that it is not in the interests of justice to appoint counsel. Mr. Monsivais's filings in this action are cogent and well-organized. He has a clear understanding of the nature of his claims and provides relevant citations to the record and legal authority. Further, he is limited to raising claims in this action that were fairly presented in state court proceedings, and an attorney would not be able to raise new claims or arguments. *See* 28 U.S.C. § 2254(d). As explained *supra*, Mr. Monsivais's claims do not entitle him to relief, and appointing an attorney to represent him would not change this outcome. Accordingly, Mr. Monsivais's motions for the appointment of counsel, dkts. [12], [14], [43] are **DENIED.** Additionally, Mr. Monsivais's motions for legal and court assistance, dkts. [44], [45] are **GRANTED** to the extent that the Court's order provides relevant legal citations to caselaw related to this matter but are **DENIED** to the extent that the Court does not have general legal reference materials to provide pro se litigants. Further, his requests for copies of deposition transcripts from his trial, trial exhibits presented to the jury, and cell phone records, dkts. [50], [51] shall be addressed by separate order.

## VI. Conclusion

Mr. Monsivais's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**, and a certificate of appealability shall not issue. Petitioner's Motion for Injunction on Release of Custody, dkt. [23], is **DENIED as moot**. Final Judgment in accordance with this decision shall issue.

Petitioner's Motions in dkts. [2], [6], [12], [14], [43], [47], [53] are **DENIED**. Mr. Monsivais's motions, dkts. [8], [10], [22], [31] are **GRANTED** to the extent that the Court has considered the supplementation and judicial notices when ruling on the merits of the petitioner's habeas petition. Mr. Monsivais's motions for legal and court assistance, dkts. [44], [45] are **GRANTED** to the extent that the Court's order provides relevant legal citations but are **DENIED** to the extent that the Court does not have general legal reference materials to provide pro se litigants. Mr. Monsivais's requests for copies of deposition transcripts from his trial, trial exhibits presented to the jury, and cell phone records, dkts. 50, 51 shall be addressed by separate order. Mr. Monsivais's motion for status on hearings/injunction, dkt. [36], is **GRANTED** to the extent that this Court's order provides the status of his pending motions.

Mr. Monsivais's motion for copies, dkt. [54], is **GRANTED** to the extent that the Court will provide Mr. Monsivais with a copy of the *in forma pauperis* on appeal form and a copy of the docket sheet. The Court does not have a form for notices of appeal.  In order to initiate an appeal, a party must file a notice of appeal. Fed. R. App. 3(a)(1). "Generally, a notice of appeal must (1) contain the

name of the party or parties taking the appeal; (2) designate the judgment or order, or part thereof, being appealed; and (3) name the court to which the appeal is being taken." *Smith v. Grams*, 565 F.3d 1037, 1041 (7th Cir. 2009) (citing Fed. R. App. 3(c)(1)). The **clerk is directed** to provide a copy of the docket sheet and a copy of the Court's Application to Proceed *in Forma Pauperis* on Appeal form to Mr. Monsivais.

The **clerk is directed** to seal the exhibit at docket 6-1.

**SO ORDERED.**

Date: 3/19/2025

James Patrick Hanlon
United States District Judge
Southern District of Indiana


Distribution:

DAVID ARMANDO MONSIVAIS, IV
250273
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

All electronically registered counsel